FILED
97 SEP 26 PM 3: 14
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 26 1997

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CYNTHIA VARGAS PUGH, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NUMBER |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, et al., | ) 97-C-1330-NE |
| Defendants. | ) |

## MEMORANDUM OF OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Cynthia Vargas Pugh initially filed this action in the Circuit Court of Cullman County, Alabama, on April 29, 1997. Defendants include Life Insurance Company of North America ("LINA"), Connecticut General Life Insurance Company ("CIGNA"), Wal-Mart Stores, and Juanita Pugh, as administrator of the estate of Anthony J. Pugh. Plaintiff seeks to recover benefits under two insurance policies covering the life of Anthony Pugh, said policies having been issued by the defendant insurance companies as part of the group coverage made available to employees of defendant Wal-Mart Stores. Because the policies are viewed as "employee benefit plans" under Employee Retirement Income Security Act, 29 U.S.C. §§1001, *et seq.* ("ERISA"), the defendants removed the case to this court on the basis of federal question jurisdiction.

The gravamen of plaintiff's complaint is that she is the common-law wife of Anthony Pugh. In her complaint, she says that

at the time of Anthony Pugh's death, "the decedent had been cohabitating with plaintiff Cynthia Pugh as man and wife for approximately five (5) years." Complaint, ¶10. She insists that she is entitled to receive from the defendant insurance companies the proceeds of Anthony Pugh's group insurance policies.

Defendant Juanita Pugh, the natural mother of the decedent and administrator of his estate, has now moved the court for summary judgment in her favor.

For the reasons which follow, summary judgment is due to be granted in favor of Juanita Pugh.

I

The following facts are not genuinely disputed.

Anthony Jones Pugh died in an automobile accident on October 13, 1996. He was thirty years old at the time of his death.

Anthony Pugh's marriage to Rhonda K. Pugh ended in divorce. Custody of the one child born of this marriage, Jessica Lacole Pugh, was awarded to Anthony's parents, J.B. Pugh and Juanita Pugh, three years before Anthony's death.

Anthony Pugh was employed by Wal-Mart Stores at the time of his death. On his Profit Sharing Trust Beneficiary Designation, he named Juanita Pugh, whom he described as "mother;" and "Cindy Vargas," whom he described as "fiance," as equal (50%) beneficiaries. This form was executed on June 1, 1995.

2

Anthony Pugh failed to designate a beneficiary on his $16,000 group policy issued by CIGNA; and likewise he failed to designate a beneficiary on his $100,000 group policy issued by LINA.

The CIGNA policy gives to that company the option, where no beneficiary is designated, to pay the proceeds of the policy "to any of [the insured's] following living relatives: spouse, mother, father, child or children, or to the executors or administrators of [the insured's] estate." Exhibit C. § entitled "Certificates/Riders," p. 13.

The LINA policy provides that where no beneficiary is designated, benefits "will be paid in one lump sum to the first surviving class of the following class of beneficiaries: (a) wife or husband, (b) child or children, (c) mother or father, etc." Exhibit D, p. 3.

Five days following Anthony Pugh's death, plaintiff filed in the Probate Court of Cullman County a petition for letters of administration for the decedent's estate. Her petition alleged that as the common law wife of the decedent, she was entitled to administer the estate. Less than a week after the filing of plaintiff's petition, defendant Juanita Pugh filed in the same court a petition for letters in the same estate. Juanita Pugh's petition was predicated on her status as next of kin to the decedent.

        Probate Judge Tom Burleson set a hearing on the competing petitions.

        The October 30, 1996, hearing commenced with a statement from plaintiff's counsel:

> [Mr. Berry]    We have filed a petition to amend the estate stating that we are the common law wife of the decedent.
>
> [The Court]    You would like to present an amendment?
>
> [Mr. Berry]    Yes, sir, and we wish to put on testimony to that effect to establish the common law relationship.
> . . .
>
> [The Court]    Before we do that I'll tell you what we'll do. We'll take testimony from whatever sources y'all want to take testimony from.

JP Exhibit E, Transcript of Probate Court Hearing ("TR"), pp. 2-3. Testimony was taken and documents were offered into evidence.

        Plaintiff testified at the hearing. She said that she met Anthony in March 1992; that he moved in with her two months later; and from that point up to the point of his death, they lived together and considered themselves man and wife. Tr. 8-10.

        All of the evidence adduced at the hearing related to the issue of whether plaintiff was the common law wife of Anthony Pugh. Plaintiff's counsel concluded his post-hearing brief: "...this court should hold that Cynthia Vargas Pugh is the common law wife

4

of Anthony and, as such, is entitled to Letters of Administration."
JP Exhibit B-4.

On November 15, 1996, Judge Burleson granted letters of administration to defendant Juanita Pugh. He specifically wrote:

> It is the opinion of this court from the evidence presented at the hearing that no legal basis exists to find that Cynthia Vargas was the common law wife of Anthony J. Pugh at the time of his death. Therefore, it is ORDERED, ADJUDGED, and DECREED; that pursuant to Section 43-2-42 of the Code of Alabama, Juanita Pugh has priority to serve as the Administratrix of the Anthony J. Pugh Estate, and accordingly the petition filed by Juanita Pugh for Letters of Administration is hereby granted.

JP Exhibit C.

II

In the Cullman County Probate court proceedings, the clearly defined issue was whether the plaintiff was the common law wife of Anthony Pugh at the time of his death. In this action, the only basis of plaintiff's claims is that she is the widow of Anthony Pugh. The issue is identical--whether seen in the context of estate administration or ERISA plans. If she is his widow, she is entitled to administer his estate. If she is his widow, she is the beneficiary of his ERISA plans.

There can be no doubt that the issue was actually, fully, and fairly litigated in the Probate Court.[1] Quite clearly, the

---

[1] Plaintiff's argument that the issue was not actually "litigated" in Probate Court is rather puzzling in light of the

5

resolution of plaintiff's asserted marital status was necessary to the Probate Court judgment;[2] and the parties are the same.

Like hand in glove, the undisputed material facts of this case fit comfortably into the doctrine of collateral estoppel.

Plaintiff says that the Probate Court lacked competence to determine the existence of a common law marriage, relying on language in *Ex parte Slade*, 382 So.2d 1127 (Ala. 1980). In *Slade*, a probate court, in an *ex parte* guardianship order, concluded that the appointed guardian was the common law wife of the ward. In the guardianship petition, there was no allegation of marital status; the petition rested solely on Slade's alleged mental incompetency. On these facts, the Alabama Supreme Court observed that probate courts "have not been given jurisdiction" over the establishment of a common law marriage." *Id.*, 1128.

---

transcript of the hearing. JP Exhibit E. Plaintiff never asserted any unreadiness before, during, or after the hearing. The Probate Judge held the record open for ten days after the hearing, specifically saying to plaintiff's counsel: "Any information you want to submit to me within those ten days, I'll be happy to accept it." *Id.*, p. 3. Counsel for both parties were given the opportunity to present to the Probate Court whatever evidence they deemed appropriate.

[2] Under Alabama law, if plaintiff had been found to be the wife of Anthony Pugh, the Probate Court would have been required to grant her petition for letters, rather than the petition of Juanita Pugh. The preference statute, ALA. CODE, § 43-2-42, provides that "[a]dministration of an intestate's estate *must be granted* to one of the persons...in the following order: (1) the husband or *widow;* (2) the next of kin entitled to share in the distribution of the estate." (Emphasis added).

*Slade* is inapposite. To the extent that the relied-on language may be viewed as a holding in that mandamus action, all that the court held is that in a guardianship action where the marital status of the petitioner is not an issue, probate courts are not empowered to declare the existence of a common law marriage.

On the other hand, Alabama law unequivocally grants to probate courts "original and general" jurisdiction over "the granting of letters of testamentary and of administration" as well as "[all] controversies in relation to the right of executorship or of administration." ALA. CODE Section 12-13-1(b)(2),(3). Surely, the existence or non-existence of a marital relationship was the controversy at issue in the Probate Court. Moreover, state law requires that orders and judgments of probate courts be given "the same validity and presumptions which are accorded to judgments and orders of other courts of general jurisdiction." *Id.* at Section 12-13(c).

Where, as here, the parties submit to the general jurisdiction of the probate court for a determination of entitlement to administer an estate, which turns on the existence *vel non* of a common law marriage, and by judgment the probate court settles the controversy, the parties are judicially estopped from collaterally attacking the judgment. Such judgment is entitled to

7

the same force and effect as the judgment of any court of general jurisdiction.

By separate order, summary judgment shall be granted in favor of defendant Juanita Pugh.

DONE this 26th day of September, 1997.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON